


UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| HUTTERVILLE HUTTERIAN BRETHREN, INC., a South Dakota nonprofit corporation; GEORGE WALDNER, SR., TOM WALDNER, KENNETH WALDNER, Individually and as officers and directors of Hutterville Hutterian Brethren, Inc.; | \* | CIV 12-1010 |
| | \* | |
| | \* | MEMORANDUM OPINION AND ORDER RE: MOTION TO DISMISS |
| Plaintiffs, | \* | |
| vs. | \* | |
| JEFFREY T. SVEEN; RODRICK L. TOBIN; HARVEY C. JEWETT; and SIEGEL, BARNETT & SCHUTZ, L.L.P., a South Dakota limited liability partnership, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs Hutterville Hutterian Brethren, Inc. (Hutterville), George Waldner, Sr., Tom Waldner, and Kenneth Waldner, brought an action against attorneys Jeffrey T. Sveen, Rodrick L. Tobin, and Harvey C. Jewett, as wall as Siegel, Barnett & Schutz, L.L.P., an Aberdeen, South Dakota law firm. The initial complaint alleged a RICO cause of action under 18 U.S.C. § 1962(c) against Defendants Sveen, Jewett, Tobin and Siegel Barnett; a cause of action under 18 U.S.C. § 1962(d) for conspiracy to violate RICO against Defendants Sveen, Jewett, Tobin aud Siegel Barnett; a cause of action for breach of fiduciary duty against Defendants Sveen, Tobin, Jewett and Siegel Barnett; a cause of action for common law fraud against Defendants Sveen, Tobin, Jewett and Siegel Barnett;

1

and a cause of action for South Dakota statutory deceit against Defendants Sveen, Tobin, Jewett and Siegel Barnett. Doc. 1.

All of the Defendants moved pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss Plaintiffs' Complaint. Doc. 34. Plaintiffs then amended their Complaint to withdraw their 18 U.S.C. § 1962(c) and (d) claims against Siegel Barnett, and added an 18 U.S.C. § 1962(a) claim against Sveen, Jewett and Tobin. A motions hearing was held on May 6, 2013, at which time the Court heard argument. The parties later supplemented their submissions on the motion to dismiss. Doc. 79 and 80. After considering the pleadings and documents on file, the arguments of counsel, and the applicable law, the Court is ruling on the motion to dismiss.

## *Ongoing Controversy and Related Case Law History*

The Plaintiff Hutterville Hutterian Brethren, Inc., (Hutterville) is a South Dakota nonprofit religious corporation with its principal place of business in Stratford, South Dakota. The individual Plaintiffs, George Waldner, Sr., and Tom and Kenneth Waldner, are members of and claim to be officers and directors of Hutterville. The Defendants Jeffrey Sveen, Rodrick Tobin and Harvey Jewett are lawyers from Aberdeen, South Dakota. Defendant Siegel Barnett & Schultz is a limited liability partnership law firm with its principal place of business in Aberdeen, South Dakota.

The allegations in the amended complaint revolve around Hutterville, a South Dakota nonprofit corporation with the stated purpose of promoting the Hutterite religious faith. The members of Hutterville live a communal lifestyle with all real and personal property being owned by the religious corporation. Hutterville operates as a communal colony farm, raising and selling crops and livestock.

Hutterville and other colonies belong to the Schmiedleut Conference of the Hutterian Church. Rev. Jacob Kleinsasser was Senior Elder or President of the Conference. This ordinarily is a lifetime appointment, and the Senior Elder acts as the final arbiter regarding issues affecting the members of the Church and the colonies. In 1992, after Rev. Kleinsasser was accused of improper financial

dealings regarding the Church and colonies, a Conference meeting was held and attended by 173 ministers of the Hutterian Church. Ninety-five ministers repudiated Rev. Kleinsasser's leadership as Senior Elder and chose to follow the leadership of Rev. Joseph Wipf. The remaining 78 ministers remained loyal to the leadership of Rev. Kleinsasser. All but 5 of the 63 colonies in the Dakotas and Minnesota repudiated the leadership of Rev. Kleinsasser. *See Decker ex rel. Decker v. Tschetter Hutterian Brethren, Inc.*, 594 N.W.2d 357, 360 (S.D. 1999).

The Plaintiffs in the case at hand remained loyal to Rev. Kleinsasser. The schism caused by the split in pro and anti Kleinsasser factions on the Hutterville colony has resulted in litigation and appeals to the South Dakota Supreme Court. In *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d 169 (S.D. 2010), followers of Rev. Joseph Wipf, as individuals and directors and officers of Hutterville commenced an action in state court seeking a declaration that they were the properly elected directors of Hutterville, and also applied for a temporary restraining order to prevent the followers of Rev. Kleinsasser from acting as directors of Hutterville. This action was commenced after attempts in 2008 and 2009 by the followers of Rev. Joseph Wipf to replace the followers of Rev. Kleinsasser as directors of Hutterville so as to repudiate Rev. Kleinsasser and follow Rev. Joseph Wipf. In August 2008, in an attempt to prevent the followers of Rev. Joseph Wipf from effecting this change of governance, George Waldner, Sr., one of the plaintiffs in the action at hand, called a special meeting of Hutterville at which the members removed the directors who were followers of Rev. Joseph Wipf. After additional meetings and elections resulted in giving the Wipf faction control, the Kleinsasser faction refused to recognize the officers and directors from the Wipf faction and refused to relinquish control of Hutterville's farming enterprise. *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d at 171-172.

In *Hutterville Hutterian Brethren, Inc. v. Waldner*, the state circuit court granted injunctive relief to the Wipf faction after analyzing Hutterville's articles of incorporation and bylaws regarding meeting requirements. The state circuit court further ordered that the Kleinsasser-Waldner faction was precluded from being officers or directors of Hutterville unless they were elected pursuant to the meeting requirements. Although the Wipf faction officers and directors obtained control of

3

Hutterville, George Waldner, Sr., who remained the minister of the Church, and two other Church elders issued a Church resolution on August 18, 2009, excommunicating the Wipf faction officers and directors, as well as other Wipf faction members. After an October 18, 2009 election of Kleinsasser-Waldner faction directors and officers, the Wipf faction requested relief from the state court based on the change of events. The Waldner-Kleinsasser faction sought a dismissal of the action based on lack of subject matter jurisdiction, and the state circuit court concluded that the matter had become a religious dispute which deprived the court of jurisdiction under the First Amendment. *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d at 172-174.

In affirming the state circuit court's dismissal of the action, the South Dakota Supreme Court reasoned that the First Amendment and article VI, § 3 of the South Dakota Constitution preclude civil courts from entertaining religious disputes over doctrine even if a portion of the dispute involves secular claims. *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d at 175 (citing *Decker ex rel. Decker v. Tschetter Hutterian Brethren, Inc.*, 594 N.W.2d at 364). In rejecting the Wipf faction's argument that the governance issue could be resolved by applying neutral principles governing corporate law, the South Dakota Supreme Court noted that the Wipf faction itself had advanced religious arguments contesting the validity of their excommunications to support their arguments concerning their entitlement to the corporate director and officer positions. 791 N.W.2d at 176. The South Dakota Supreme Court concluded, "Hutterville's articles of incorporation and bylaws reflect that governance of the corporation is inseparable from membership in the Hutterian Church and compliance with its religious principles." *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d at 177. The South Dakota Supreme Court concluded that since voting memberships, directorships and officerships of Hutterville are inseparable from religious principles, these matters were shielded from judicial scrutiny under the First Amendment. 791 N.W.2d at 179.

Continuing disagreements between the Kleinsasser-Waldner faction and the Wipf faction in Hutterville resulted in another lawsuit in state circuit court and another appeal to the South Dakota Supreme Court in *Wipf v. Hutterville Hutterian Brethren, Inc.*, 808 N.W.2d 678 (S.D. 2012). While the appeal in *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d 169 (S.D. 2010), was

pending, the Wipf faction brought a second action alleging that deadlock and misapplication of corporate assets was causing irreparable injury to the corporation's financial status and requested the dissolution of Hutterville and the appointment of a receiver to carry out the business of the corporation while Hutterville wound up its business. The Kleinsasser-Waldner faction unsuccessfully moved the trial court to dismiss for lack of subject matter jurisdiction on First Amendment grounds. The circuit court ruled that Hutterville's directors were deadlocked, that Hutterville was not functioning as a communal corporation and was incapable of carrying out its corporate purposes. The circuit court therefore ordered Hutterville dissolved pursuant to S.D.C.L. § 47-26-22,[1] and appointed Harvey C. Jewett, a defendant in the case at hand, as the receiver to divide the corporate property among the Hutterville membership, a group that the circuit court defined as "persons of the age of 8 and older who resided upon the real property of [Hutterville] on November 17, 2010." In reversing the circuit court on jurisdictional grounds, the South Dakota Supreme Court concluded "that the underlying religious controversies over church leadership so pervade the dissolution of the religious corporation that the dissolution is beyond a secular court's jurisdiction." *Wipf v. Hutterville Hutterian Brethren, Inc.*, 808 N.W.2d at 686.

Before the *Wipf v. Hutterville Hutterian Brethren, Inc.* case was remitted to the circuit court,

---

[1] S.D.C.L. § 47-26-22 provides:
> Courts of equity shall have full power to liquidate the assets and affairs of a corporation in an action by a member or director when it is made to appear:
> (1) That the directors are deadlocked in the management of the corporate affairs and that irreparable injury to the corporation is being suffered or is threatened by reason thereof, and either that the members are unable to break the deadlock or there are no members having voting rights; or
> (2) That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; or
> (3) That the members entitled to vote in the election of directors are deadlocked in voting power and have failed for at least two years to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or
> (4) That the corporate assets are being misapplied or wasted; or
> (5) That the corporation is unable to carry out its purposes.

5

Jewett, as the appointed receiver, moved for approval of his accounting, for payment of his fees and expenses, and for payment of a bill from Siegel, Barnett & Schutz, LLP. The circuit court approved Jewett's actions and accounting, although it denied payment of the bill from Siegel, Barnett & Schutz, LLP. The circuit court terminated the receivership and discharged Jewett on October 25, 2012. Both parties appealed from the circuit court's decision. While this federal action has been pending, the South Dakota Supreme Court affirmed the circuit court's exercise of control over the Hutterville property after the remand and affirmed the circuit court's order that Jewett, his staff and counsel were "released and discharged from any claims by, and liability of any nature to Hutterville Hutterian Brethren, Inc., Beulah Hutterian Brethren, Inc., and their respective members, directors, officers, successors, affiliates, and assigns relating, directly or indirectly to the actions, decisions, receipts, disbursements, and accountings involved with the administration of the receivership." *Wipf v. Hutterville Hutterian Brethren, Inc.*, 834 N.W.2d 324, 334 (S.D. 2013).

At all relevant times in the present action the Kleinsasser-Waldner faction, led by Plaintiff George Waldner, Sr., continues to maintain that it is in control of Hutterville, and the Wipf faction, led by Johnny Wipf, continues to believe that it is in control of Hutterville. Plaintiffs allege in their amended complaint that attorneys for the law firm of Siegel, Barnett and Schutz and the state court receiver Harvey Jewett have conspired with others, including Johnny Wipf, who claims to be the President of Hutterville, to wrest control of Hutterville from its duly elected officers and directors and to transfer control of Hutterville's business, assets and property to the Wipf faction co-conspirators. Plaintiffs further allege that what they characterize as the scheme of the Defendants in this action was carried out through a series of continuous related predicate acts of racketeering.

### *Standards in Determining Motions to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. Under a motion to dismiss based on lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the defendant may challenge either the plaintiff's complaint on its face or based on the factual truthfulness of the claims. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). The plaintiff carries the burden of

showing that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). "The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468, 470 (8th Cir. 1993).

In considering a motion under Rule 12(b)(6) the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *cited in Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.*(internal citations omitted); *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). Although a plaintiff in defending a motion under Rule 12(b)(6) need not provide specific facts in support of its allegations, *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), it must include sufficient factual information to provide the grounds on which its claim rests, and to raise a right to relief above a speculative level. *Twombly*, 550 U.S. at 555-556 & n3. Although Federal Rule of Civil Procedure 8 may not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."*Ashcroft v. Iqbal*, 556 U,S, 662, 678 (2009). A claim must have facial plausibility to survive a motion to dismiss. *Id.* Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

### WHETHER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION PRECLUDES THIS COURT FROM ADJUDICATING THE CLAIMS RAISED IN THE AMENDED COMPLAINT?

Defendants contend that based upon the conduct of the competing factions it is unknown

which faction is in control of Hutterville, and that therefore the resolution of the claims raised in the amended complaint would require a prohibited entanglement in essentially religious controversies. Citing to the South Dakota Supreme Court decisions of *Decker ex rel. Decker v. Tschetter Hutterian Brethren, Inc.*, 594 N.W.2d 357, 360 (S.D. 1999) ( dismissal of suit by one Hutterite faction against opposing faction for numerous tort causes of action upheld); *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d 169 (S.D. 2010); and *Wipf v. Hutterville Hutterian Brethren, Inc.*, 808 N.W.2d 678 (S.D. 2012),² Defendants maintain that the First Amendment to the United States Constitution precludes this Court from adjudicating the claims in this federal action. Although Defendants acknowledge that this not a case of one Hutterite faction suing the other, Defendants maintain that since this case consists of a Hutterite faction suing the attorneys who represented either the corporation or the other faction concerning issues arising from the 1992 schism, the First Amendment applies with equal force in this case. The legal authority of the Defendants to act with regard to the allegations in the Amended Complaint hinges upon which faction is rightfully in control of Hutterville.

## *Rooker-Feldman doctrine*

Defendants contend that this lawsuit "is nothing more than an impermissible collateral attack on the South Dakota Supreme Court decisions dismissing the actions for lack of subject matter jurisdiction" and that the *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction. In *Rooker v. Fidelity Trust Co.*, 263 US. 413 (1923), and *District of Columbia Court of Appeals v Feldman*, 460 U.S. 462 (1983), the United States Supreme Court held that no court of the United States, other than the United States Supreme Court, has jurisdiction to review final state court

---

²Defendants also rely on *Wollman v. Poinsett Hutterian Brethren, Inc.*, 844 F.Supp. 539 (D.S.D. 1994), in which former members of communal religious colonies brought an ERISA action claiming they were wrongfully deprived of property interests in colony assets. The district court held that federal jurisdiction did not exist under ERISA in that plaintiffs were not "employees" and colonies were not "employers" under ERISA. In addition, the district court held that it was forbidden by the First Amendment from granting injunctive relief to prevent the colonies from expelling the plaintiffs from membership because resolution of the dispute would require extensive inquiry into religious law and polity.

judgments. In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005), the Supreme Court observed: "Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." The Supreme Court in *Exxon* clarified that a district court is not precluded from exercising subject-matter jurisdiction on the basis that a party has attempted to litigate in federal court a matter that was previously litigated in state court. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Exxon*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)); *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam) ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker–Feldman* rule."). The Defendants in this federal action were never parties to the state court actions and much of the conduct alleged in the Amended Complaint in this case occurred after the South Dakota Supreme Court issued its decision in *Wipf v. Hutterville Hutterian Brethren, Inc.*, 808 N.W.2d 678 (S.D. 2012). The RICO, breach of fiduciary duty, common law fraud and deceit claims that are alleged in this lawsuit were not determined by the South Dakota Supreme Court and this Court's jurisdiction is not precluded by the *Rooker-Feldman* doctrine.

### *First Amendment Principles*

The First Amendment to the Constitution of the United States forbids Congress to make any law respecting an establishment of religion or prohibiting the free exercise thereof. U.S. Const. amend. I. The Free Exercise Clause restricts the government's ability to intrude into ecclesiastical matters or to interfere with a church's governance of its own affairs and protects the power of religious organizations "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952). The courts as well as the legislatures are

forbidden from interfering with Free Exercise rights. *See Kreshik v. Saint Nicholas Cathedral*, 363 U.S. 190, 191 (1960) (per curiam). "For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them" *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1976).[3] *See also Watson v. Jones*, 13 Wall. 679, 20 L.Ed. 66 (1872), cited in *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 132 S.Ct. 694, 704 (2012).

The courts recognize, however, even in church property disputes, "that the State has a legitimate interest in resolving property disputes, and that a civil court is a proper forum for that resolution." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull*, 393 U.S. 440, 445 (1969); *see also Church of God in Christ, Inc., v. Graham*, 54 F.3d 522 (8th Cir. 1995). The First Amendment therefore requires that civil courts decide church property disputes without resolving underlying controversies concerning religious doctrine. *Presbyterian Church in U.S.*, 393 U.S. at 449. The government, may not lend its power to one or the other side in controversies over religious authority or religious dogma. 393 U.S. at 445. It is firmly established, however, that the civil courts are not prohibited from resolving property disputes to which only neutral principles of law apply. *See Jones v. Wolf*, 443 U.S. 595, 602-603 (1979) ("The State has an obvious and legitimate interest in the

---

[3] In *Milivojevich* the Supreme Court left open the issue of "whether or not there is room for 'marginal civil court review' under the narrow rubrics of 'fraud' or 'collusion' when church tribunals act in bad faith for secular purposes." 426 U.S. at 713. *Milivojevich* was distinguished in *Church of God in Christ, Inc. v. Graham*, 54 F.3d 522, 527 (8th Cir.1995), on the basis that "*Milivojevich* dealt with an acknowledged hierarchical relationship, *see* 426 U.S. at 715 & n. 9, 96 S.Ct. at 2383 & n. 9, here we have a local congregation that considered itself autonomous from its inception." The present case is much the same as *Milivojevich* in that both cases presented issues involving control of church property, which could only be resolved by deciding an underlying religious dispute involving the right to structure and administer a church and to appoint and dismiss religious leaders of the church. The fact that more property is at stake in the present case does not change the application of the principles from *Milivojevich*.

peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively.").

In *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that the free exercise clause of the First Amendment did not prohibit application of Oregon drug laws to ceremonial ingestion of peyote, and did not prohibit Oregon from denying unemployment compensation for work-related misconduct based on the use of the drug. In *Smith*, the Supreme Court announced, "The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.'" *Smith*, 494 U.S. at 885 (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988)). The Supreme Court in *Smith* adhered to the "neutral law of general applicability test" and abandoned the balancing test set forth in *Sherbert v. Verner*, 374 U.S. 398, 402-403(1963), which required that governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest. *Smith*, 485 U.S. at 885.[4]

## *Factual Allegations in Amended Complaint*

This Court must assess the allegations in the amended complaint to determine whether the motion to dismiss should be granted. For purposes of determining this motion, the allegations will be construed in favor of the Plaintiffs. Plaintiffs allege that in 1993 Defendant Sveen and a banker met in Winnibeg, Manitoba and discussed a plan to get rid of Senior Elder Jacob Kleinsasser for the purpose of benefitting themselves. Plaintiffs allege that Defendants Sveen and Siegel Barnett devised an unlawful and fraudulent scheme to overthrow Hutterville's duly elected officers and directors and place control of Hutterville in the minority group in Hutterville. Plaintiffs allege that the false

---

[4]In 1993 Congress passed the Religious Freedom Restoration Act (42 U.S.C.A. §§ 2000bb), which reinstated the strict scrutiny standard abandoned by the *Smith* decision when it adhered to the "neutral law of general applicability" test. The Supreme Court subsequently declared the Religious Freedom Restoration Act unconstitutional as exceeding Congress' power under § 5 of the Fourteenth Amendment to enforce provisions of the Fourteenth Amendment. *See City of Boerne v. Flores*, 521 U.S. 507 (1997).

representations concerning the control of Huttterville and the methods by which the fraudulent scheme to take over Hutterville was accomplished by email, facsimile, telephone and/or mail in violation of the wire fraud and mail fraud statutes and constituted a pattern of racketeering.

Plaintiffs further allege that Defendants Sveen and Siegel Barnett counseled, advised, encouraged and assisted the Wipf faction coconspirators to open a bank account at Great Western Bank and to deposit proceeds of the sale of crops and livestock from Huttterville in that account, even though Hutterville had an existing relationship with U.S. Bank and had given U.S. Bank a first security interest in all of Hutterville's real property and the proceeds from the sale of its crops and livestock. Plaintiffs allege that the Wipf faction coconspirators deposited in to Great Western Bank more than $800,000 of funds that were subject to U.S. Bank's security interest, in violation of the bank fraud statutes.

Plaintiffs allege that although Plaintiff George Waldner, in his capacity as president of Hutterville, discharged the Siegel Barnett firm in January 2010, Defendants Sveen, Tobin and Siegel Barnett refused to acknowledge the discharge and continued to counsel, advise, encourage and assist the Wipf faction in connection with the alleged fraudulent takeover scheme. Plaintiffs allege that in their undisclosed representation of the Wipf faction and while they were purporting to be neutral, Sveen and his law firm assisted in misrepresenting the condition of Hutterville in the state court action seeking dissolution of Hutterville and the appointment of a receiver.

Plaintiffs allege that Defendant Jewett violated S.D.C.L. § § 21-21-7 and 21-21-8 when he was appointed as a receiver in the second state court action. S.D.C.L. § 21-21-7 provides: "No party or person interested in an action can be appointed receiver therein, without the written consent of the parties, filed with the clerk." Jewett, however, had been a member or professionally associated with Siegel Barnett for approximately 30 years. Plaintiffs also allege that Jewett never took an oath as required by S.D.C.L. § 21-21-8.

Plaintiffs allege that weeks after the South Dakota Supreme Court ruled on January 25, 2012,

that the state circuit court lacked subject matter jurisdiction over the receivership action, Sveen directed Johnny Wipf, from the Wipf faction to fraudulently execute deeds as Hutterville's president. These deeds purported to transfer real property, without consideration, from Hutterville to Johnny Wipf as trustee of Hutterville. On February 23, 2012, Defendant Sveen mailed a letter to the South Dakota Secretary of State which enclosed a Statement of Change of Registered Office and Registered Agent from Plaintiff George Waldner to Johnny Wipf. After Plaintiffs became aware of the attempt to change the registered agent, Plaintiffs allege that Sveen or someone on his behalf filed a fraudulent address forwarding form with the United States Post Office, which Plaintiffs contend constitutes mail fraud. Plaintiffs contend that Defendants' involvement in the preparation of the deeds and Statement of Change of Registered Office and Registered Agent constitute a violation of 18 U.S.C. § 1512(c), for tampering by means of a document corruptly altered with the intent to obstruct, influence or impede an official proceeding.

Plaintiffs allege its was discovered in March 2012 that a dozen Hutterville-owned vehicles had been fraudulently re-titled with the address of one of Sveen's neighbors to facilitate the creation of fraudulent clean titles. Plaintiffs further allege that in March of 2012, Johnny Wipf and others first removed and transported approximately 185 slaughter-ready hogs to a Minnesota processing facility, and later transported another removed and transported approximately 185 slaughter-ready hogs to an Iowa facility, and on both occasions a check for the purchase price was made payable and delivered to Prairieland, a company of which Sveen is the President and sole or majority owner. Plaintiffs contend these transactions constitute mail fraud, wire fraud, interstate transportation of stolen goods and receipt of money for the same.

Plaintiffs further contend that in April of 2012 Defendants' coconspirators, acting in furtherance of the fraudulent takeover scheme, threatened and committed acts of violence to prevent Hutterville from transporting hogs to market and that their conduct constituted unlawful interference with commerce in violation of 18 U.S.C. § 1951(a). Plaintiffs further contend that Sveen and a member of his law firm who was acting at his direction, engaged co-conspirators to create false affidavits in order to obtain ex parte protection orders. The protection orders resulted in the removal

of Hutterville members and private security guards from the Hutterville property. The day after the protection orders were obtained Sveen called counsel for Hutterville and proposed a deal whereby Hutterville hogs would be sold and the checks for the sale would be made jointly payable to George Waldner and Johnny Wipf. Plaintiffs allege the procurement of the false affidavits and proposed deal constitute extortion in violation of S.D.C.L. § 22-30A-15, as well as unlawful interference with commerce.

## *Application of First Amendment Principles to Allegations of Amended Complaint*

The question before the Court is whether it can provide a forum to resolve allegations involving "generally applicable prohibitions of socially harmful conduct," *see Smith*, 494 U.S. at 885, without making extensive inquiry into the religious law and polity of Hutterville. In *Wipf v. Hutterville*, 808 N.W.2d 678 (S.D. 2012), the Kleinsasser-Waldner faction, as defendants, successfully argued on appeal that the trial court was without subject matter jurisdiction when, among other things, the trial court appointed a receiver for the property of the Hutterite Colony corporation and ordered dissolution of the corporation and division of the corporation's assets among its colony members.

In the present case, members of the same Kleinsasser-Waldner faction are now Plaintiffs pursuing money damage claims for the Hutterite Colony corporation and for themselves as individuals against the lawyers that they contend were supporting the Wipf faction in *Wipf v. Hutterville*, 808 N.W.2d 678 (S.D. 2012). The Kleinsasser-Waldner faction as Plaintiffs claim that one of the differences concerning jurisdiction in the present litigation is that there are new causes of action, including a federal RICO claim, and that the damages alleged in the various claimed causes of action are not for the denial of church membership or some other wrong of a religious nature. The nature of the claims, whether state or federal, does not, however, control the question of whether the Court is deprived of subject matter jurisdiction because church doctrine and leadership questions so pervade the dispute.

If a neutral approach such as the ones applied in *Employment Div., Dept. of Human Resources*

*of Oregon v. Smith*, 494 U.S. 872 (1990), and *Church of God in Christ, Inc. v. Graham*, 54 F.3d 522 (8th Cir. 1995), could be taken in this case, the Court would welcome such an approach so that the people in Hutterville could be secure in moving on with their lives.[5] However, as previous litigation has made clear, since voting memberships, directorships and officerships of Hutterville are inseparable from religious principles, these matters are shielded from judicial scrutiny under the First Amendment. "Because religious issues arising from the Rev. Kleinsasser/Wipf controversy pervade the corporate governance issue, corporate governance cannot be decided without 'extensive inquiry into religious doctrine and beliefs' of the Hutterian faith." *Hutterville Hutterian Brethren, Inc. v. Waldner*, 791 N.W.2d at 179-180 (quoting *Wollman v. Poinsett Hutterian Brethren, Inc.*, 844 F.Supp. 539, 543 (D.S.D.1994)).[6]

## *Standing*

For Article III standing to exist, a plaintiff must have suffered an injury-in-fact as an essential element of standing. Injury-in-fact in the context of standing means an actual or imminent invasion of a concrete and particularized legally protected interest. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That injury "cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotations and citations omitted). "To establish standing, plaintiffs 'must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 687 (8th Cir. 2012 ) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

---

[5]In 1982 and 1983 the South Dakota Supreme Court applied the neutral-principles approach where no religious principles were involved. *See Foss v. Dykstra*, 319 N.W.2d 499 (S.D. 1982), *after remand*, 342 N.W.2d 220 (S.D. 1983).

[6]Although Plaintiffs have proposed the "wait and see" approach employed in *Drevlow v. Lutheran Church, Missouri Synod*, 991 F.2d 468 (8th Cir. 1993), and *Doe v. Hartz*, 52 F.Supp.2d 1027, 1079 (N.D. Iowa 1999), the Court rejects this proposal as it is able to predict, based upon the prior litigation, affidavits, transcripts and other documents on file, that evidence offered at a trial would involve the district court in an impermissible inquiry into church doctrine and polity.

15

Standing is the way the religious entanglement issue presents itself at the outset of this litigation because it entails the fundamental question of whether the parties Plaintiff, the Kleinsasser-Waldner faction, can bring claims on behalf of the Hutterville Hutterian Brethren, Inc., the corporate entity that holds the property of the colony but which is also controlled to at least a great extent by religious principles. That religious entanglement is demonstrated by the conflict in power at Hutterville at the time the Wipf faction sought dissolution of the corporation in the ongoing governance dispute in Hutterville. Even though the Wipf faction had gained control of Hutterville as a corporation, George Waldner, Sr., remained the minister of the church and purportedly excommunicated the members of the Wipf group. *Wipf v. Hutterville Hutterian Brethren, Inc.*, 808 N.W.2d 678, , 679 (S.D. 2012). A corporate meeting of Hutterville was subsequently held and as a result of the excommunications, members of the Wipf group were removed as officers and directors of the corporation and those positions were then taken by members of the Kleinsasser-Waldner group. *Hutterville v. Waldner*, 791 N.W.2d 169, 172-73 (S.D. 2010). The situation with regard to the intertwining of the property dispute with religion has not changed. Whichever group at any one time might be getting the upper hand on the property dispute does not alter the fact that the property dispute is deeply intertwined with the religious dispute of who is properly a member of the true church and therefore also a member of the colony and a voting member of Hutterville.

The question of the standing of the parties Plaintiff involves their entitlement to bring claims on behalf of the corporation, Hutterville Hutterian Brethren, Inc., as well as claims for themselves as individuals. Plaintiffs have also claimed they can as individuals bring derivative claims on behalf of the corporation. That begs the question, because if they cannot bring suit as claimed officers or directors because of the religious entanglement issue of whether or not they validly hold those positions, then surely as individuals they are in no better position to claim that they are members of the true church and thus members of the corporation that can bring derivative claims for the corporation. Aside from that proposition, what about the claims by the Plaintiffs as individuals in their own right? They belong to a communal organization and they have no individual property rights

or holdings.⁷

The claims brought here by the individuals in the Kleinsasser-Waldner faction are not claims for meeting basic human needs, but rather money damage claims for alleged wrongs by lawyers and a receiver where the receiver was court appointed and the lawyers assisting the other side, the Wipf faction, were allegedly interfering with the property of Hutterville such as its livestock and farmland.⁸

As individuals, the Waldner Plaintiffs as claimed members of Hutterville, the communal corporation, have no individual claims for money damages against the Wipf faction lawyers and court-appointed receiver. Having no individual claims is different from having no standing to bring separate claims for the same damages on behalf of Hutterville. The latter claims get dismissed for lack of standing. The former individual claims get dismissed for lack of any property right to make these types of property damages claims due to their individual renunciation of individual property.

---

⁷That broad statement is not to declare nor deny that such individuals have forsaken all right to medical care and food and clothing. Any determination of those issues is for another case as there are no such claims in this case. Voluntarily leaving such a community is one thing where one can forfeit communal benefits such as medical care, food, and clothing. Being involuntarily removed from membership in a communal entity because of a religious schism might not deprive one of a claim to the basic needs of life that were assured during communal membership. In such a situation, the communal organization may owe some basic human needs support to the former member that was involuntarily removed from membership and who before that had given his or her labor to the communal organization in return for the meeting of the individual's basic human needs.

⁸In April of 2013, C&C Farms commenced an action entitled, *C&C Farms, L.L. C., Plaintiff, v. Hutterville Hutterian Brethren, Inc., George Waldner, Sammy Waldner, Tom Waldner, Kenneth Waldner, and Johnny Wipf, as officers and directors of Hutterville Hutterian Brethren, Inc., Defendants*, Civ. 13-184, Circuit Court, Fifth Judicial Circuit, Brown County, South Dakota, seeking a declaration that the a Farm Lease C &C entered into with "Hutterville Hutterian Brethren, Inc., Johnny Wipf, Trustee," as landlord over 6800 acres of Hutterville farmland, was valid and enforceable. Plaintiffs then moved to amend their Amended Complaint to add as Defendants Michael Cutler, Mark Cutler and C&C Farms, L.L.C. Doc. 72. After C&C Farms, L.L.C., terminated the lease and the parties in this state court action settled their claims, Plaintiffs withdrew their motion to amend the Amended Complaint. Doc. 75.

Accordingly,

**IT IS ORDERED:**

1. That Defendants' Motion to Dismiss (Doc. 34) is granted, but the claims of the Plaintiff Hutterville Hutterian Brethren, Inc. are dismissed without prejudice;

2. That the claims against Defendant Harvey C. Jewett as the court appointed receiver are dismissed with prejudice as he has been determined by the South Dakota Supreme Court to partake of judicial immunity as a receiver, *see Wipf v. Hutterville Hutterian Brethren, Inc.*, 834 N.W.2d 324, 335-336 (S.D. 2013); and

3. That the individual claims of Plaintiffs George Waldner, Sr., Tom Waldner and Kenneth Waldner are dismissed with prejudice.

Dated this 29th day of August, 2013.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Summer Ashurst*
DEPUTY

18